1
2
3
4
5
6
7
8
9           UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA
11

12   DEBORAH K.,                          Case No.:  3:20-cv-02065-GPC-AHG
13                          Plaintiff,    **REPORT AND RECOMMENDATION**
                                          **REGARDING JOINT MOTION FOR**
14   v.                                   **JUDICIAL REVIEW**
15   KILOLO KIJAKAZI, Commissioner of
     Social Security,[1]                  **[ECF No. 15]**
16
                         Defendant.
17
18

19          This matter comes before the Court for a Report and Recommendation ("R&R") on

20   the parties' Joint Motion for Judicial Review. ECF No. 15. Plaintiff Deborah K.

21   ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying her

22   application for disability benefits and supplemental income payments. ECF No. 1 at ¶¶ 1,

23   6, 9, 10, 11. Plaintiff brings her appeal pursuant to 42 U.S.C. § 405(g). *Id*. at ¶ 1.

24

25   _____

26   [1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
27   on July 9, 2021. Although Plaintiff originally brought this action against Former
     Commissioner Andrew Saul, this case may properly proceed against Kilolo Kijakazi
28   pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **RECOMMENDS** that the District Judge **AFFIRM** the Commissioner's denial of disability benefits.

## I.    PROCEDURAL BACKGROUND

Plaintiff was born in 1965, making her an individual "closely approaching advanced age" on her alleged disability onset date. ECF No. 9, Certified Administrative Record ("AR") 36. Her past relevant work was as a purchasing agent for a dietary supplemental manufacturer, assistant HOA community management, accounts receivable sales representative, and nursery retail clerk. AR 268.

On March 21, 2018, Plaintiff filed an application for Social Security Disability ("SSD") benefits under Title II of the Social Security Act, alleging disability beginning on May 10, 2017. *See* AR 259–60. Plaintiff's application was initially denied on May 18, 2018. AR 174–77. On July 6, 2018, Plaintiff requested reconsideration of her SSD claim. AR 182. Plaintiff then filed an application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act on September 4, 2018. AR 280–296. Plaintiff's claims were denied at the reconsideration level on October 2, 2018. AR 183–187. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on October 9, 2019. AR 100–43, 188–90.

On November 13, 2019, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled and denying both SSD and SSI benefits. AR 20–43. Plaintiff filed a request for review, but the Appeals Council denied review on August 20, 2020 (AR 6–13, 256–58), making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h).

Plaintiff filed this action on October 20, 2020, against the Commissioner of Social Security ("Defendant" or "Commissioner"), seeking judicial review of the denial of her applications for SSD and SSI benefits. ECF No. 1. Defendant filed the Administrative Record on May 25, 2021. ECF No. 9. Pursuant to the Court's briefing schedule (*see* ECF Nos. 10, 14), the parties timely filed their Joint Motion for Judicial Review of Final

Decision of the Commissioner ("Joint Motion for Judicial Review") on November 2, 2021. ECF No. 15.

## II.   SUMMARY OF ALJ'S FINDINGS

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id.*; *see also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc.

Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy that the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1)–(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsbury*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

### B.     The ALJ's Application of the Five-Step Process in this Case

The ALJ first determined Plaintiff met the insured status requirements of the Social Security Act through December 21, 2021. AR 23, 25. Accordingly, the relevant period for the disability analysis is the alleged disability onset date of May 10, 2017, through November 13, 2019, the date of the ALJ's decision. AR 37.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the alleged onset date of May 10, 2017. AR 25. At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine and mental impairments variously diagnosed as depression, anxiety, and posttraumatic stress disorder." AR 26. These, he determined, significantly limited Plaintiff's ability to perform basic work activities. AR 26. However, the ALJ determined that Plaintiff's medically determinable impairments (displaced fracture in left great toe, heel spur, carpal tunnel syndrome of the right wrist, and right shoulder pain) did not represent more than a minimal limitation in her ability to perform

basic work activities. AR 26. The ALJ determined that fibromyalgia had not been established as a medical determinable impairment. AR 26–27. The ALJ noted that Plaintiff's allegations alone were insufficient to establish fibromyalgia, and that the medical evidence from the record did not reflect repeated manifestations of fibromyalgia symptoms or co-occurring conditions. AR 26–27.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listing. AR 27. The ALJ further determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R § 404.1567(b) and 20 C.F.R. § 416.967(b), except that she "can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently push, pull, and or reach overhead with the bilateral upper extremities. The claimant must avoid concentrated exposure to vibration and hazards, such as unprotected heights and dangerous machinery. The claimant is limited to unskilled tasks, consistent with a specific vocational preparation of no more than two." AR 29.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms (lumbar and cervical pain with a typical pain level of a six to nine out of ten in her shoulder, back, and leg, as well as partial paresis in her left leg), but that her statements regarding the intensity, persistence, and limiting effects of her symptoms (limited ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and use her hands) were not consistent with the medical evidence in the record. AR 30. For example, the ALJ concluded that, though Plaintiff often complained of back, leg, and arm pain, repeated physical examination findings of her upper and lower extremities were "generally normal" and, at most, noted some tenderness. AR 30–31. The ALJ also concluded that no additional mental limitations were needed because, upon review of her treatment records, Plaintiff had the appropriate affect and normal thought processes during exams. AR 32. Further, the ALJ found that Plaintiff's ability to perform day-to-day activities at a normal level of activity and interaction was inconsistent

with her allegations of functional limitations. AR 32.

The ALJ found the opinions of the state agency consultants who evaluated Plaintiff's physical functioning, Dr. Kalmar and Dr. Gleason, to be persuasive. AR 33. The ALJ found the opinion of Nurse Practitioner Batac to be slightly less persuasive. AR 33. The ALJ found the opinions of the state agency consultants who evaluated Plaintiff's mental functioning, Mr. Hill and Dr. Berkowitz, to be persuasive. AR 33–34. The ALJ found the opinion of Dr. Pudol to be unpersuasive. AR 34. The ALJ found the opinion of the therapist, Ms. Padilla, to be not persuasive. AR 34. The ALJ considered a third-party statement from Plaintiff's friend, but found it far less persuasive than the opinions of the medical experts. AR 35. The ALJ noted Plaintiff's treating provider, Dr. Uddin, but did not explain the amount of weight given to her opinion because she "did not provide an assessment of the claimant's functional limitations." AR 35.

At step four, based on Plaintiff's RFC and the testimony of the vocational expert, Ms. Ayerza, the ALJ concluded that Plaintiff was unable to perform any past relevant work as an administrative clerk (DOT 219.362-010, Light as generally performed, Semi-Skilled, at Specific Vocational Preparation level ("SVP") 4). AR 35–36.

At step five, upon consideration of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 37. Based on the testimony of the vocational expert, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 37. The ALJ concluded that Plaintiff could work in the following light, unskilled (SVP 2) level occupations: a mailroom clerk (DOT 209.687-026), cashier II (DOT 211.462-010), or a self-service store attendant (DOT 299.677-010). AR 37. Accordingly, the ALJ determined that Plaintiff was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act at any time from the alleged onset date of May 10, 2017, through November 13, 2019, the date of the ALJ's decision. AR 37–38.

/ /

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If so, the Court must affirm the Commissioner's decision. *Id.*

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The standard is "highly deferential." *Valentine*, 574 F.3d at 690. Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)); *see also Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) ("[w]here evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence") (internal citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also

responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court also may overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, it may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 ("[a] decision of the ALJ will not be reversed for errors that are harmless").

## IV.   DISCUSSION

Plaintiff raises three grounds for reversal in the joint motion: (1) that the ALJ failed to properly weigh the medical opinion evidence of Dr. Pudol, a treating physician, and state agency consultants Drs. Kalmar and Gleason, in determining Plaintiff's physical RFC; (2) that the ALJ improperly evaluated Plaintiff's subjective statements; and (3) that the ALJ relied on a flawed hypothetical to the vocational expert. ECF No. 15 at 4. Defendant contends the ALJ's decision is supported by substantial evidence, free of legal error, and should be affirmed. *Id.* at 53.

### A.   Whether the ALJ Failed to Properly Weigh Medical Opinion Evidence in Determining Plaintiff's physical RFC

Plaintiff challenges the ALJ's determinations that the medical opinion of Dr. Christopher Pudol was unpersuasive and the medical opinions of state agency consultants Drs. Kalmar and Gleason were persuasive. AR 34. Dr. Pudol had treated Plaintiff since December 2016 for chronic back pain, among other ailments. AR 586. If Dr. Pudol's opinion were treated as persuasive, it would likely result in a disability

determination because Dr. Pudol's opinion directly contradicts the RFC assessed by the ALJ and the evaluations of Dr. Kalmar and Dr. Gleason.

### 1. Dr. Pudol's Opinion

On September 9, 2019, Dr. Pudol completed a Fibromyalgia Residual Functional Capacity Questionnaire regarding Plaintiff. AR 1014. Dr. Pudol listed Plaintiff's prognosis as poor. AR 1014. Dr. Pudol found that Plaintiff met the American College of Rheumatology criteria for fibromyalgia and listed her other diagnosed impairments as "chronic low back pain with sciatica, chronic right shoulder pain, lumbar spinal stenosis." AR 1014. Dr. Pudol checked the boxes on the form next to these additional impairments: multiple tender points, non-restful sleep, morning stiffness, chronic fatigue, muscle weakness, irritable bowel syndrome, premenstrual syndrome, dysmenorrhea, breathlessness, anxiety, panic attacks, depression, and carpal tunnel syndrome. AR 1014. Dr. Pudol checked the boxes on the form for pain in these locations: lumbosacral spine, cervical spine, thoracic spine, right shoulder, right arm, left arm, left knee, right hand, left hand, right hip, right leg, and left leg. AR 1015. He checked all the boxes in the section for factors that precipitate pain. AR 1015. He checked the box indicating that Plaintiff's pain would frequently interfere with the attention and concentration needed to perform simple work tasks. AR 1015. He concluded that Plaintiff could not walk the duration of a city block without rest or severe pain. AR 1015. He circled the options for 5 and 10 minutes of sitting before needing to get up. AR 1015. He circled the option for 5 minutes of standing before needing to sit down or walk around. AR 1015. During an 8-hour workday, Dr. Pudol checked the boxes indicating that Plaintiff could sit or stand/walk for less than 2 hours in an 8-hour working day with normal breaks. AR 1016. Dr. Pudol indicated that Plaintiff would need to take unscheduled breaks every 5 minutes, for 5-10 minutes, during an 8-hour working day. AR 1016. Dr. Pudol also estimated that Plaintiff would likely be "absent from work as a result of the impairments or treatment … more than four days per month." AR 1017.

The ALJ found that Dr. Pudol's opinion was unpersuasive. AR 34. The ALJ found

that the opinion lacked supportability and was not consistent with the record. AR 34. With respect to supportability, the ALJ relied heavily on the "checklist-style" of the opinion and its conclusory nature. AR 34. With respect to consistency, the ALJ cited several areas of the record, including medical records and Plaintiff's own testimony, that the ALJ found to be inconsistent with Dr. Pudol's opinion. AR 34.

Plaintiff contends that, contrary to the ALJ's assertion, Dr. Pudol did explain the evidence supporting his opinions. ECF No. 15 at 8. Plaintiff notes that Dr. Pudol has been treating Plaintiff since December 2016, seeing her every three months for chronic low back pain with sciatica, chronic right shoulder pain, and lumbar spinal stenosis. *Id*. at 5. Dr. Pudol "cited to orthopedic treatment records documenting clinical findings and laboratory and diagnostic test results supporting the diagnoses and assessment." *Id*. at 5. Plaintiff reiterates that Dr. Pudol's opinion regarding Plaintiff's symptoms and functional limitations "were found to be consistent with the available clinical evidence," and cites to findings in the record. *Id*. at 5, 10–11. Plaintiff contends that the ALJ placed undue weight on Plaintiff's activities of daily living and argues that these activities do not contradict the opinions of Dr. Pudol. *Id*. at 12. Further, Plaintiff contends that the "decision is lacking an explanation for why the ALJ relied on opinions from non-treating, non-examining consultants who are not relevant specialists and whose findings are explicitly contradicted by well supported and consistent opinions from [Plaintiff]'s treating physician." *Id*. at 14. Plaintiff argues that the ALJ failed to articulate how he considered evidence relevant to the factors of supportability and consistency in evaluating the opinions. *Id*. at 14. Plaintiff also contends that the length, frequency, and nature of treatment are still relevant factors in determining the persuasiveness of medical opinions. *Id*. at 15.

Defendant argues that the ALJ's decision and explanation fully comply with the new regulatory framework for evaluating medical opinions and medical evidence governs this case, and thus were not in error. *Id*. at 15. This new framework eliminates the treating physician rule and places medical opinions "on an equal footing." *Id*. at 22. It requires the ALJ to explain how he considered the factors of supportability and consistency when

evaluating any medical opinion. *Id.* at 17. Defendant argues that the ALJ did just that with respect to Dr. Pudol's opinion, specifically noting that "Dr. Pudol did not support his opinion with adequate rationale and his opinion was not consistent with the overall evidence of record and Plaintiff's daily activities." *Id.* at 26. Defendant contends that the ALJ permissibly found that Dr. Pudol's opinion was in the form of a checklist and he only included conclusions regarding functional limitations without a detailed rationale for those conclusions. *Id.* at 28. Defendant argues that the ALJ recognized that the medical record "supports the existence of degenerative disc disease of the lumbar and cervical spine," but also noted that other medical findings, such as routinely normal gait and full motor strength, do not support greater physical limitations than those identified in the RFC. *Id.* at 30–31.

### 2.  Dr. Kalmar and Dr. Gleason's Opinions

Dr. Kalmar and Dr. Gleason provided opinions as non-examining state agency consultants. AR 149, 152. Dr. Kalmar reviewed and summarized Plaintiff's medical records in a report dated May 4, 2018. AR 149. Dr. Kalmar noted that Plaintiff had intact motor function, possible widening of the distal radioulnar joint, mildly displaced oblique fracture on the fourth proximal phalanx, multiple instances of decreased range of motion, antalgic gait, moderate spondylosis, mild-to-moderate lumbar dextroscoliosis, moderate right neural foraminal stenosis, bilateral facet arthropathy with mild left neural foraminal stenosis, and lumbar spondylosis severely involving L3-L4 where significant spinal stenosis and left neural foraminal narrowing are demonstrated. AR 149. Dr. Kalmar concluded that Plaintiff could perform work consistent with a light exertional level but could never climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach overhead bilaterally; and should avoid concentrated exposure to extreme temperatures, vibration, pulmonary irritants, or hazards. AR 152–54. Dr. Kalmar opined that Plaintiff could sit with normal breaks for 6 hours in an 8-hour workday. AR 153. He opined that Plaintiff had intact motor functions. AR 154. He also opined that Plaintiff's "statements about the intensity, persistence, and

functionally limiting effects of the symptoms [are not] substantiated by the objective medical evidence alone[.]" AR 152. To that regard, he opined that the most informative factors he assessed were "ADLs, the location, duration, frequency and intensity of the individual's pain and other symptoms, [and] precipitating and aggravation factors." AR 152. He then concluded that Plaintiff's statements were "partially consistent" with the medical evidence on file. AR 152.

Dr. Gleason review and summarized Plaintiff's records in a report dated September 29, 2018. AR 152. Like Dr. Kalmar, Dr. Gleason concluded that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [are not] substantiated by the objective medical evidence alone[.]" AR 152. He opined that the most informative factors he assessed were "ADLs, the location, duration, frequency and intensity of the individual's pain and other symptoms, [and] precipitating and aggravation factors." AR 152. He then concluded that Plaintiff's statements were "partially consistent" with the medical evidence on file. AR 152. Dr. Gleason summarized plaintiff's records, noting findings of "lumbar spondylosis, severely involving L3-L4 where significant spinal stenosis and left neural foraminal narrowing are demonstrated," carpal tunnel, multiple epidural steroid injections to help with pain, "has problem during arm inwards," noticed mild tenderness during exam, "chronic low back pain," cervical radiculopathy, chronic shoulder pain. AR 164. He summarized plaintiff's allegations, noting "the claimant's spinal stenosis causes her lumbar and cervical pain, her typical pain level of about a 6–9 in her shoulder, back and leg and she has partial paresis in her left leg. She has nerve pain in her left leg, groin, and knee. She has had severe nerve pain in her right arm which she had carpal tunnel surgery for. She is only able to stand for about 2 minutes before needing to move or sit down. She needs to be moving and shifting in her chair constantly because she cannot get comfortable…. The claimant continues to have pain and discomfort due to her osteoarthritis in her cervical spine, herniated discs, lumbar radiculopathy and cervical myelopathy." AR 163. He also summarized objective medical findings. In July 2018 she was seen for back pain and was given an epidural since a prior

13

one helped with pain. AR 164. Her broken toe had significantly healed, but she still had some pain. AR 164. Plaintiff "has problem during arm inwards" and noted "mild tenderness" in her biceps. AR 164.

Plaintiff argues that the ALJ erred in finding Dr. Kalmar's and Dr. Gleason's opinions to be persuasive because their opinions were limited to a review of Plaintiff's treatment records through August 2018, they did not examine Plaintiff, and they were not specialists. Plaintiff does not identify any specific treatment records post-dating August 2018 that would have modified their analysis. Defendant argues that Plaintiff's records from September 2018 to July 2019 would not have warranted more restrictive limitations. *Id*. at 31. Defendant contends that the ALJ was not required to address the specialization factor with respect to Dr. Kalmar or Dr. Gleason in light of his supportability and consistency analysis. *Id*. at 32 (citing 20 C.F.R. § 404.1520c(b)(2)).

### *3. Legal Standard*

Plaintiff filed for disability after March 27, 2017. AR 259–60 (filed on March 21, 2018). The Social Security Administration's revised regulations for considering medical opinions and prior administrative medical findings, therefore, apply. *See* 20 C.F.R. § 404.1520c (2017). Under the revised regulations, an ALJ must evaluate the "persuasiveness" of any medical opinion and articulate his assessment as to each. *Id*.

In evaluating persuasiveness, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Id*.; 20 C.F.R. § 404.1520c(c)(1)–(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors—supportability and consistency—when determining a medical source's persuasiveness, unless two conflicting medical sources are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)–(3).

Departing from prior case law, under the new regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations override the treating physician rule, which automatically gave greater weight to the medical opinions of treating physicians, required clear and convincing reasons for rejecting an uncontradicted medical opinion of a treating physician, and required specific and legitimate reasons supported by substantial evidence in the record for rejecting the contradicted medical opinion of a treating physician. *Jones v. Saul*, No. 2:19-cv-01273-AC, 2021 WL 620475, at *6–*10 (E.D. Cal. Feb. 17, 2021); *see Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

The Ninth Circuit has not yet addressed whether, and to what extent, ALJs are still held to the "clear and convincing" and "specific and legitimate" standards when rejecting a medical opinion. *Robert D. v. Kijakazi*, No. 20cv2132-AJB-MSB, 2021 WL 5905734, at *3 (S.D. Cal. Dec. 14, 2021). Through regulation, the Social Security Administration may properly displace judicial precedent when an administrative agency intervenes by providing an "authoritative and reasonable interpretation of a statute." *See Lambert v. Saul*, 980 F.3d 1266, 1268, 1275 (9th Cir. 2020). Thus, district courts in the Ninth Circuit generally have determined that the Circuit's prior rule providing deference to treating providers no longer applies because of the new regulations. *See*, *e.g.*, *Kathy Jean T. v. Saul*, No. 20cv1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); *but see Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the "specific and legitimate" standard for rejecting contradicted opinions of a treating doctor continues to serve as a "benchmark against which the Court evaluates [the ALJ's] reasoning"). This Court "agrees with the numerous district courts that found the treating source rule is inconsistent with the SSA's 2017 regulations, which effectively displace or override it." *Julie R. M. v. Kijakazi*,

No. 20cv1608-LL-MDD, 2021 WL 4993034, at *4 (S.D. Cal. Oct. 26, 2021); *see Allen T. v. Saul*, No. 19-1066, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.' The Court defers to the new rules here.") (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)); *see, e.g.*, *Jones*, 2021 WL 620475, at *6–*10; *Joseph Perry B. v. Saul*, No. SACV 20-1196-KS, 2021 U.S. Dist. LEXIS 59742, at *7 (C.D. Cal. Mar. 29, 2021). Accordingly, the Court will address the ALJ's evaluation of the medical opinions at issue here under the 2017 regulations, with an eye to whether the ALJ adequately explained his reasons for his assessment of the persuasiveness of Dr. Pudol's, Dr. Kalmar's, and Dr. Gleason's opinions. *See Titus L.S. v. Saul*, No. 2:20-cv-04825-AFM, 2021 WL 275927, at *7–*9 (C.D. Cal. Jan. 26, 2021); *see, e.g.*, *Kathleen G.*, 2020 WL 6581012, at *3 ("Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review."); *Jones*, 2021 WL 620475, at *8 ("The new regulation does not allow the ALJ to forego articulation of their reason or reasons altogether; rather, it provides specific articulation requirements.") (internal citations omitted).

Under the revised regulations, supportability is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The more relevant the evidence and explanations are, the more persuasive the opinion or finding will be. *See id*. Consistency is the extent to which an opinion or finding is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent it is with evidence from other sources, the more persuasive it will be. *See id*.

//

//

//

### 4. Discussion

The ALJ evaluated Dr. Pudol's opinion as follows:

> The opinion of Christopher Pudol, D.O., dated September 9, 2019, is unpersuasive. [] He indicated that the claimant [] was capable of less than sedentary exertion and required multiple unscheduled breaks every five minutes during an eight-hour workday, yet did not require an assistive device to ambulate, and would likely miss more than four days of work per month. [] This opinion is not persuasive as it lacks supportability and is inconsistent with the record. As for supportability, this checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any detailed rationale for those conclusions. As for consistency, this opinion is inconsistent with the record. Exam findings chronicle generally intact neurological functioning, including normal gait, negative straight leg raises, and full motor strength of the extremities []. Further, the claimant reports that she is physically able to manage self-care, operate a car, and perform light household chores and yardwork such as light laundry and raking leaves. [] Dr. Pudol also assessed a GAF score of 50 in June 2019, which is unpersuasive. [] This score is inconsistent with his accompanying notes that indicate the claimant demonstrated appropriate mood and affect, reported her functioning was only "somewhat difficult" in describing her depression as "moderate" and her anxiety as "mild." [] Finally, the opinions of Dr. Christopher Pudol, D.O., dated to November 2017 and February 9, 2018, finding the claimant "currently unable to work in her usual capacity" or indicating that the claimant was "disabled" for temporary periods are not persuasive. [] The conclusion that a claimant cannot work is an "issue reserved to the commissioner," which makes it evidence that is inherently neither valuable nor persuasive pursuant to the regulation.

AR 34 (internal citations omitted).

Dr. Pudol's opinion was comprised largely of short responses or checked boxes without any explanations. AR 1014–17. The ALJ found that his opinion did not meet the supportability factor because of this lack of explanation. *Id.* "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). An ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Id.* (quoting *Molina v. Astrue*,

674 F.3d 1104, 1111 (9th Cir. 2012)). Plaintiff argues that Dr. Pudol's questionnaire did include rationale for his conclusions because he "cited to orthopedic treatment records documenting clinical findings and laboratory and diagnostic test results supporting the diagnoses and assessment." ECF No. 15 at 5. However, the "citation" Plaintiff refers to is Dr. Pudol's response to a question about "identify[ing] any clinical findings, laboratory and test results that show your patient's medical impairments," which stated curtly: "see orthopedic notes." AR 1014. There are no notes attached to Dr. Pudol's opinion, even though the first page of the form states that relevant treatment notes should be attached. AR 1014.

The ALJ also found that Dr. Pudol's opinion did not satisfy the consistency factor in the regulations. "Inconsistency between a physician's treatment notes and [his] opinion is an acceptable reason to discount the source's opinion." *Julie R. M.*, 2021 WL 4993034, at \*4; *see, e.g.*, *Jones*, 2021 WL 620475, at \*10 (holding, in the context of the 2017 revised regulations, that the ALJ reasonably found a treating physician's opinion was not persuasive where it was inconsistent with the doctor's own treatment notes). Upon review of the record, the Court agrees that Dr. Pudol's report is inconsistent with the medical record. *See* AR 1014. Dr. Pudol's report notes that Plaintiff's anxiety, depression, and PTSD would affect her ability to work a regular job on a sustained basis; however, he repeatedly reported that Plaintiff was "oriented to time, place person & situation," had an "appropriate mood and affect," and was negative for other psychological symptoms. AR 656 (May 12, 2017); AR 591 (June 21, 2017); AR 595 (Aug. 23, 2017); AR 638 (Oct. 11, 2017); AR 819 (May 14, 2018); AR 804 (Aug. 9, 2018); AR 983 (Jan. 21, 2019); AR 969 (Apr. 1, 2019); AR 959 (May 10, 2019); AR 945 (July 25, 2019); AR 939 (Aug. 23, 2019). Further, Dr. Pudol repeatedly categorized Plaintiff's depression as "mild." AR 1012 (Aug. 9, 2018); AR 1002 (Sept. 26, 2018); AR 984 (Jan. 21, 2019); AR 970 (Apr. 1, 2019); AR 965 (May 10, 2019).

Dr. Pudol's report lists "muscle weakness" as one of Plaintiff's impairments, but Nurse Practitioners Jersey and Batac repeatedly reported that her "straight leg raise test

negative bilaterally, FABERs, Gaenslen's, distraction, thigh thrust, and compression are normal" and her cervical and lumbosacral "muscle strength was within normal limits." AR 694 (June 15, 2017); AR 756 (June 29, 2017); AR 752 (July 27, 2017); AR 749 (Aug. 24, 2017); AR 725 (Jan. 11, 2018); AR 721 (Feb. 8, 2018); AR 736 (Nov. 21, 2017); AR 730 (Dec. 12, 2017); AR 717 (Mar. 15, 2018); AR 712 (Apr. 17, 2018); AR 707 (May 30, 2018); AR 698 (June 27, 2018); AR 856 (Aug. 6, 2018); AR 851 (Sept. 10, 2018); AR 846 (Nov. 13, 2018); AR 841 (Jan. 21, 2019); AR 838 (Mar. 28, 2019); AR 834 (June 4, 2019). Dr. Pudol's report concluded that Plaintiff was capable of less than sedentary exertion and required unscheduled breaks every five minutes, but there are repeated references in the medical record to a normal gait and ability to stand or ambulate without assistance. AR 477 (Apr. 3, 2017); 450 (May 22, 2017); AR 694 (June 15, 2017); AR 756 (June 29, 2017); AR 753 (July 27, 2017); AR 749 (Aug. 24, 2017); AR 726 (Jan. 11, 2018); AR 722 (Feb. 8, 2018); AR 736 (Nov. 21, 2017); AR 730 (Dec. 12, 2017); AR 717 (Mar. 15, 2018); AR 712 (Apr. 17, 2018); AR 707 (May 30, 2018); AR 698 (June 27, 2018); AR 856 (Aug. 6, 2018); AR 851 (Sept. 10, 2018); AR 846 (Nov. 13, 2018); AR 842 (Jan. 21, 2019); AR 838 (Mar. 28, 2019); AR 834 (June 4, 2019).

The Court has carefully reviewed the record, and agrees that there are, for example, instances of tenderness to spine palpation. AR 694 (June 15, 2017); AR 752 (July 27, 2017); AR 749 (Aug. 24, 2017); AR 725 (Jan. 11, 2018); AR 721 (Feb. 8, 2018); AR 736 (Nov. 21, 2017); AR 729 (Dec. 12, 2017); AR 712 (Apr. 17, 2018); AR 706 (May 30, 2018); AR 697 (June 27, 2018); AR 838 (Mar. 28, 2019); AR 834 (June 4, 2019); AR 745 (Sept. 21, 2017); AR 741 (Oct. 26, 2017). However, there are also instances of no tenderness to spine palpation. AR 756 (June 29, 2017); AR 717 (Mar. 15, 2018); AR 712 (Apr. 17, 2018); AR 706 (May 30, 2018); AR 697 (June 27, 2018); AR 856 (Aug. 6, 2018); AR 851 (Sept 10, 2018); AR 846 (Nov. 13, 2018); AR 841 (Jan. 21, 2019); AR 830 (July 22, 2019); AR 861 (July 23, 2018). Additionally, of the 14 instances of tenderness, 6 of those times, the spinal ranges of motion were normal. AR 694 (June 15, 2017); AR 752 (July 27, 2017); AR 749 (Aug. 24, 2017); AR 697 (June 27, 2018); AR 745 (Sept. 21,

2017); AR 741 (Oct. 26, 2017). As such, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630.

The ALJ's finding that Plaintiff's activities of daily living conflicted with Dr. Pudol's report is sufficiently developed. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (The ALJ must develop the record to demonstrate how the daily activities are inconsistent with the physician's opinion). During the hearing, Plaintiff testified that she performs light household chores, drives her car locally, and is physically able to manage self care. AR 112–16. She also was able to do some light cleaning for an elderly couple. AR 112. The ALJ found the Plaintiff's statements conflicted with Dr. Pudol's report, but the ALJ still took Plaintiff's limitations into consideration for the RFC. AR 30–32; *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity" to be deemed eligible for benefits).

As set forth above, the Court finds that the ALJ permissibly treated Dr. Pudol's report as unpersuasive. The ALJ adequately addressed consistency and supportability, pursuant to the revised regulations. 20 C.F.R. § 404.1520c(b)(2) ("we will explain how we considered the supportability and consistency factors" and "may, but are not required to, explain how we considered the [other enumerated] factors").

The ALJ also properly weighed the opinions of the state agency consultants. Dr. Kalmar reviewed Plaintiff's file on May 4, 2018, and Dr. Gleason reviewed treatment records through August 2018. This means that the agency consultants did not have the opportunity to review: x-ray of foot on May 11, 2018, which showed a phalanx fracture (AR 769, 771); x-ray of right shoulder on July 9, 2018, which was negative (AR 824); ten pain management appointments from May 30, 2018 to July 22, 2019 (AR 705, 696, 859,

854, 849, 844, 840, 836, 832, 828); seven physical therapy appointments in August 2019 (AR 919, 864, 868, 872, 876, 880, 884); ten appointments for chronic pain and depression from September 19, 2018, to August 23, 2019, which included appointments regarding Plaintiff's memory impairment (AR 1004, 998, 992, 986, 981, 967, 962, 956, 943, 937); eleven psychotherapist appointments from November 19, 2018 to September 2, 2019 (AR 890–99); and a September 14, 2019 neurologist appointment (AR 1018).

The fact that the state agency consultants did not have the benefit of reviewing these additional records, however, is not a sufficient reason to diminish the value or weight of their opinions as evidence in support of the RFC determination. "Consultative examiners, who evaluate a claimant's condition during the initial phases of the benefits application process, will never have all of the evidence available to the ALJ, whose decision is rendered often years later, at which point the claimant will have amassed additional evidence of his alleged disability." *Jose Z. v. Saul*, No. EDCV 18-2476-KS, 2020 WL 434259, at *8 (C.D. Cal. Jan. 28, 2020) (internal record citations omitted). Importantly, Dr. Kalmar and Dr. Gleason were able to review the MRI results from March 9, 2017, AR 495–96, and May 17, 2017, AR 497–98, and consider them in their analysis. Plaintiff has failed to explain how their review of a necessarily incomplete record caused reversible error in this case.

The Court notes that neither Dr. Kalmar, nor Dr. Gleason, nor Dr. Pudol are specialists. Plaintiff, however, argues that the ALJ's decision lacks an explanation for why he relied on opinions of Dr. Kalmar and Dr. Gleason, who are not specialists and who never examined Plaintiff. ECF No. 15 at 14. Though ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision, ALJs "may, but are not required to, explain" how they also considered the source's specialization, and other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2), 416.920(c)(3)–(5); *see* 20 C.F.R. § 416.920c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior

administrative medical findings in your case record."); *see also Julie R.M.*, 2021 WL 4993034, at *4 ("The ALJ is not required to explain how they consider the remaining factors (the medical source's relationship with the claimant, specialization, or other factors) unless the ALJ finds that 'two or more medical opinions or prior administrative medical findings about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same.') (ellipses in original) (quoting 20 C.F.R. §§ 404.1520c(b)(2)–(3)). Here, since the ALJ did not find two or more medical opinions or prior administrative medical findings about the same issue to be equally well supported and consistent with the record, he was only required to evaluate supportability and consistency, which he did. *See, e.g.*, *Julie R.M.*, 2021 WL 4993034, at *6 (finding that the ALJ sufficiently evaluated two medical sources' opinions, who were specialists in mental health and had a long-term relationship with the claimant, and "did not err by omitting his reasoning regarding the factors of specialization and relationship with the claimant," because doing so is not required under the 2017 revision).

## B.   Whether the ALJ Improperly Evaluated Plaintiff's Subjective Statements

Plaintiff takes issue with the ALJ's finding that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limited effects of her symptoms were not consistent with the medical record. ECF No 15 at 38. Plaintiff argues that the ALJ's reliance on Plaintiff's activities of daily living was improper, as was his conclusion that clinical and objective evidence does not support a finding of physical disability. *Id*. at 38. Plaintiff contends that "[b]ecause [Plaintiff] produced evidence of underlying impairments that the ALJ determined could reasonably be expected to cause Plaintiff's alleged symptoms[], no specific objective findings were required to support her statements regarding the severity of her conditions." *Id*. at 39. Plaintiff notes her honorable work history, which enhances her credibility when claiming an inability to work. *Id*. at 39.

Defendant agrees that the ALJ is required to make specific findings regarding a

claimant's subjective allegations, but contends that the ALJ "did not 'arbitrarily discredit' a claimant's subjective testimony" and that the "ALJ here provided valid reasons, supported by substantial evidence in the record, in finding Plaintiff's symptom testimony not fully consistent with the record." *Id.* at 40. Defendant argues that, while consistency with the medical evidence cannot be the sole reason for rejecting Plaintiff's statements, it was the ALJ's "primary consideration" because it was a "relevant factor that []he was required to consider." *Id.* at 41. Defendant argues that the ALJ reasonably found that Plaintiff's subjective complaints were inconsistent with the medical evidence—repeated instances where she exhibited normal gait, full motor strength, and lack of edema—and Plaintiff's activities of daily living, which suggested that Plaintiff was quite functional and able to care for her own personal needs. *Id.* at 41–43.

### 1. *Legal Standard*

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). There must be some clinical or diagnostic evidence "which show[s] the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities" that reasonably could be expected to produce the alleged pain or other symptoms. *Id.* Assuming such a medical underpinning exists, the ALJ then will evaluate whether the claimant's symptoms reasonably can be accepted as consistent with (1) objective medical evidence, such as medical signs and laboratory findings and (2) other evidence such as previous statements by the claimant, treating and non-treating sources, and other individuals "about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work," and ability to work. 20 C.F.R. § 404.1529(a).

When evaluating the credibility of a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis. *See Molina*, 674 F.3d at 1112. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted). The claimant is not required to show that an

underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of the pain. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Second, if the first step has been satisfied and there is no evidence of malingering, then the ALJ may reject the claimant's claims about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015

"An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The ALJ is required to "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* A "line-by-line exegesis of the claimant's testimony" is not required, but the ALJ must do more than offer "non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." *Lambert*, 980 F.3d at 1277.

## 2. Discussion

At step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 30. At step two, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 30. The ALJ elaborated:

> Subsequent treatment records from January 10, 2018 show ongoing complaints of arm and leg pain, but physical exam findings of the upper and lower extremities were generally normal []. Subsequent records, from February 8, 2018 to June 27, 2018, show the claimant had ongoing complaints of neck pain, upper extremity pain, back pain, and lower extremity pain. While

physical exam findings revealed some tenderness and some reduction in range of motion of the cervical and or lumbar spine, her lumbar and cervical paraspinal muscle strength and tone were within normal limits, and her gait and station was normal.[]. Likewise, when the claimant continued to complain of back pain and reported a heaviness on her legs on July 5, 2018, she had only mild musculoskeletal tenderness and on examination[]. The claimant was advised to apply Bengay, ice, or heat, and she was told to practice stretching. []. The following month, the claimant complained of shoulder pain, but her physical exam findings were normal [], and studies of the shoulder were negative [].

. . .

Recent records, from September 10, 2018 to July 22, 2019, show ongoing complaints of low back pain, leg pain, shoulder pain, and even hip pain, but physical exam findings were generally unremarkable. Physical exam findings generally revealed some tenderness and reduced range of motion to the cervical and or lumbar spine but no obvious deformities to the upper or lower extremities, normal gait, full motor strength, and negative straight leg raise.

. . .

Recent examinations show the claimant presented with depressed and anxious affect, tearful at times, and with feelings of guilt, helplessness, and or worthlessness, but she was oriented to person, place, and time, was cooperative, and generally exhibited normal thought processes [].

. . .

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with her reported day-to-day activities. I must assess the consistency of the claimant's statements about the intensity, persistence, and limiting effects of symptoms with the objective medical evidence and the other evidence of record. Despite her combination of alleged impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted to activities of daily living including attending to her personal hygiene, preparing light meals, performing light household chores, managing her finances, shopping in stores, driving her car, socializing with others, and displaying sufficient concentration and attention to follow television programs []. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. I find the claimant's ability to participate in such activities is inconsistent with her allegations of functional limitations.

AR 32 (internal citations omitted). Upon careful review of the record, the Court concurs that there are inconsistencies. For example, Nurse Practitioner Batac examined Plaintiff in

July 2019 and although Plaintiff "had a concern [about] her memory," upon examination, Plaintiff's "memory [was] intact, immediate recall intact, long-term recall intact." AR 828, 830. Likewise, Plaintiff often reported that her pain worsened when cold, but that it lessened with ice. AR 854, 840, 836, 832, 828. In Nurse Practitioner Clark's assessment of Plaintiff's psychiatric systems, she notated that Plaintiff was "feeling down, depressed or hopeless and little interest or pleasure in doing things," but simultaneously listed her psychiatric system as "negative" for problems, and that Plaintiff was "oriented to time, place, person & situation. Appropriate mood and affect." AR 627. Similarly, Plaintiff reported "depressed mood, fatigue, anxiety, and weakness" to Nurse Practitioner Batac, but upon examination, Plaintiff had "muscle strength within normal limits," was "oriented to person, place and time," and her affect was appropriate. AR 851.

"In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.' [] For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, … and 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Molina*, 674 F.3d at 1113. The Court finds that the ALJ sufficiently considered inconsistencies and provided clear and convincing reasons for discrediting some of Plaintiff's subjective testimony.

### C.      Whether the ALJ Relied on a Flawed Hypothetical to the Vocational Expert

Plaintiff argues that the ALJ failed to present a hypothetical to the vocational expert that accurately described all of Plaintiff's mental limitations. ECF No. 15 at 45. Ms. Ayerza, the vocational expert, testified that Plaintiff's 15-year work history "fits into the category of administrative clerk, which is also called general office clerk. That would be light work per the DOT, SVP: 4, so semi-skilled work, DOT number 219.362-010. … they were performed in the medium range." AR 134–35. The ALJ asked Ms. Ayerza the following hypothetical question:

/ /

> If we assume a hypothetical individual of Ms. Kramer's age, and her educational background, and her work history as you've just summarized who could perform no greater than light work, and who would not be able to climb any ladders, or ropes, or scaffolds. And who could perform all other postural activities on an occasional basis. Who could also frequently push and pull and/or reach overhead with the bilateral upper extremities. And lastly, who would also need to avoid concentration exposure to vibration, and also hazards such as unprotected heights and/or dangerous machinery. In your opinion, would someone having those restrictions be able to perform Ms. Kramer's previous occupations as a general office clerk or administrative clerk?

AR 135–36. Ms. Ayerza responded with mail room clerk (light, unskilled, SVP 2), cashier II (light, unskilled, SVP 2), and self-service store attendant (light, unskilled, SVP 2). AR 136–37. The ALJ asked a follow up hypothetical:

> And how about if we assume an individual with those same limitations as that first hypothetical, but who would [be] limited to only unskilled work duties as say as would be consistent with an SVP level to 1 to 2, but no greater than 2. Would such an individual, first of all, be able to perform that prior job as an administrative clerk?

AR 137. Ms. Ayerza responded, "no." AR 137. The ALJ followed up:

> And how about if our individual with those same cumulative limitations as that second hypothetical would be also limited to only sedentary work activity, would such an individual -- would there be any types of jobs that you feel such an individual would still be able to perform?

AR 137–38. Ms. Ayerza responded, "There would be some sedentary, unskilled jobs. And also, there would be sedentary jobs related to the worker's past work history. Most noticeably receptionist and information clerk. … Yes [there would be some skill transferability]." AR 138. The ALJ inquired further:

> How about if we have an individual who say would be off task for even unskilled work duties, say at a rate of 25 percent of their typical workday on a consistent basis. Would such an individual be able to sustain any fulltime competitive work at all in the national economy?

AR 138. Ms. Ayerza responded, "that results in the person not competing at least the 80th

percentile of overall production compared to the normal good average worker; that person would not be competitive." AR 138. The ALJ followed up:

> How about if our individual say would be absent from the workplace or worksite say at a rate of three to four days per month also on a consistent basis. Would that also be a work preclusive situation as well?

AR 139. Ms. Ayerza responded, "because if someone is absent more than 16 hours per month, full days or partial days, that person would not be competitive." AR 139. Plaintiff's counsel then asked a follow up question:

> Is if the individual is not able to or unable to deal with the public, superficial contact with supervisors and coworkers, would those receptionist and information clerk type jobs still be able to be performed?

AR 139. Ms. Ayerza responded, "no." AR 140.

Plaintiff contends that, while "the ALJ found [Plaintiff] has 'moderate' limitations in concentration, persistence, or pace, … the accepted hypothetical question to the [vocational expert] relied on by the ALJ only limited [Plaintiff] mentally to unskilled work" and "did not impose any limitations on [Plaintiff]'s ability to concentrate, persist at tasks, nor maintain a regular pace." ECF No. 15 at 45–46. Because the "vocational expert testified that if an individual was off task for 25 percent of the workday on a consistent basis, she could not sustain fulltime competitive employment," Plaintiff argues that, had Plaintiff's ability to concentrate, persist, and maintain a regular work pace been included in the hypothetical, she would have been found to be disabled. *Id*. at 47. Plaintiff further argues that, "[b]ecause the ALJ did not refer to any evidence to support his conclusion that [Plaintiff]'s moderate limitations in concentration, persistence, or pace only limit h[er] to unskilled work, remand is required." *Id*. at 52.

Defendant interprets Plaintiff's argument as a challenge to the RFC, and contends that the ALJ's evaluation process of Plaintiff's mental limitations is different from "the question of what the claimant can still do despite those limitations—i.e., the claimant's RFC." *Id*. at 48. Defendant argues that the ALJ's explanation that the "limitations identified

in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id.* at 48. Further, Defendant contends that, "even though the majority of the medical opinions found that Plaintiff had no severe mental impairment and the record documents unremarkable mental status examination findings, the ALJ nonetheless limited Plaintiff to unskilled tasks because the record established that she received treatment for depression." *Id.* at 49. Thus, Defendant argues that the hypothetical posed to the vocational expert was proper. *Id.* at 51.

### 1.  Relevant Cases

The parties cite *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) and *Brink v. Comm'r*, 343 F. App'x 211, 212 (9th Cir. 2009) for their respective positions. In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony … [such as when an] ALJ's hypothetical describing an ability to do 'simple, routine, repetitive work' [does not explicitly list] deficiencies in concentration, persistence, or pace." 539 F.3d at 1174. In *Brink*, the Ninth Circuit noted that "simple, repetitive work" and "work requiring concentration, persistence, or pace" were not interchangeable in a hypothetical question, because "repetitive, assembly-line work … might well require extensive focus or speed." 343 F. App'x at 212.

The Court finds *Stubbs-Danielson* more analogous to the instant case. Other "district courts have [also] extended *Stubbs-Danielson*'s reasoning to cases in which the ALJ did find moderate restrictions in concentration, persistence, or pace while employing, at step two, the 'special psychiatric review technique' described in 20 C.F.R. §§ 404.1520a and 404.916a, but assessed an RFC only restricting the plaintiff to simple, routine tasks." *Jennifer E. C. v. Kijakazi*, No. EDCV-20-1815-PLA, 2021 U.S. Dist. LEXIS 226219, at *18–*19 (C.D. Cal. Nov. 23, 2021) (collecting cases); *see, e.g.*, *Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014) (agreeing with Commissioner "that the ALJ's [RFC]

'limitation to simple routine 1-2 step unskilled tasks' sufficiently addresses [claimant's] moderate limitation in concentration, persistence, or pace."); *see also Wilder v. Comm'r of Soc. Sec. Admin.*, 545 F. App'x 638, 639 (9th Cir. 2013) (ALJ did not err by failing to include the step two finding that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace in his RFC because "the medical evidence in this record does not support any work-related limitation in [plaintiff's] ability to sustain concentration, persistence or pace").

### 2. Discussion

Here, the Court agrees with Defendant that "the ALJ properly translated Plaintiff's moderate difficulties with maintaining concentration, persistence, or pace, into an RFC for unskilled tasks." ECF No. 15 at 49. Plaintiff had inconsistent mental status examination findings, but the ALJ denoted a mild limitation in "understanding, remembering or applying information," a mild limitation in "interacting with others," and a moderate limitation in "concentrating, persisting, or maintaining pace," and nonetheless limited Plaintiff to unskilled tasks. AR 28; *see, e.g.*, *Lee v. Berryhill*, 721 F. App'x 604, 608 (9th Cir. 2017) ("[T]he ALJ accounted for his finding that [plaintiff] had moderate difficulties in concentration, persistence, or pace by limiting [plaintiff] to 'simple repetitive tasks' because this limitation accorded with the restrictions discussed in the medical record."). The ALJ's hypothetical questions were proper and do not provide grounds for remand.

### VI.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) **AFFIRMING** the Commissioner's decision. ECF No. 15; AR 23–38.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **March 2, 2022**. The document

should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **March 9, 2022**.

**IT IS SO ORDERED**.

Dated:  February 16, 2022

Honorable Allison H. Goddard
United States Magistrate Judge

3:20-cv-02065-GPC-AHG