1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

DEBORAH ANN KRAMER,

12

Plaintiff,

13

v.

14

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

15
16

Defendant.

Case No.:  20cv2065-GPC(AHG)

**ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION RE JOINT MOTION FOR JUDICIAL REVIEW AND REMANDING CASE TO COMMISSIONER**

**[ECF NO. 15.]**

17
18
19
20
21
22
23
24
25
26
27
28

On October 20, 2020, Plaintiff Deborah Ann Kramer ("Plaintiff") filed this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and supplemental security income benefits ("SSI") under Title XVI of the Act.  (ECF No. 1.)

Pursuant to the Magistrate Judge's scheduling order, the parties filed a joint motion for judicial review.  (ECF Nos. 10, 15.)  On February 16, 2022, Magistrate Judge Allison H. Goddard issued a report and recommendation ("Report") recommending that the Court affirm the Commissioner's decision.  (ECF No. 16.)  Plaintiff filed objections to the

Report on March 2, 2022.  (ECF No. 17.)  Having carefully reviewed the parties' arguments, the administrative record, and the applicable law, the Court ADOPTS in part and DECLINES TO ADOPT in part the Report and REMANDS the case to the Commissioner for further proceedings.

**Procedural Background**

Around March 21 or 22, 2018, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act alleging a disability date of May 10, 2017.  (ECF No. 9-4, Administrative Record ("AR") 157; ECF No. 9-6, AR 259-60.)  On May 18, 2018, Plaintiff's application was initially denied.  (ECF No. 9-5, AR 174-77.)  Around September/October 2018, Plaintiff filed an application for Supplemental Security Income benefits.  (ECF No. 9-6, AR 280-96.)  On October 2, 2018, both claims were denied at reconsideration.  (*Id.*, AR 182, 183-87.)

Subsequently, Plaintiff filed a request for a hearing by an administrative law judge ("ALJ") on October 9, 2018.  (ECF No. 9-5, AR 188-90.)  A video hearing was held on October 9, 2019.  (ECF No. 9-3, AR 100-43.)  Plaintiff appeared with counsel and testified.  (*Id.*)  On November 13, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled under the Act and denied DIB and SSI benefits.  (ECF No. 9-2, AR 20-38.)  On December 3, 2019, Plaintiff sought review of the ALJ's decision with the Appeals Council.  (ECF No. 9-5, AR 256.)  On August 20, 2020, Plaintiff's request for review was denied by the Appeals Council and the ALJ's decision became the final decision of the Commissioner.  (ECF No. 9-2, AR 6-12.)

On October 20, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  The parties filed their Joint Motion for Judicial Review.  (ECF No. 15.)  On February 16, 2022, the Magistrate Judge recommended that the Court affirm the Commissioner's denial of disability benefits to which Plaintiff objects.  (ECF Nos. 16, 17.)

/ / /

/ / /

## Factual Background

Plaintiff, a resident of Vista, California, was born on June 28, 1965 and was 51years old at the time of the onset of disability and has a 12th grade education.  (ECF No. 9-3, AR 105; ECF No. 9-7, AR 374-75.)  She has past relevant work as a purchasing assistant for a dietary supplements manufacturer, assistant HOA community manager for a property management company and sales clerk/account representative at an auto auction business.  (ECF No. 9-7, AR 363.)  Plaintiff claims the following impairments: spinal stenosis lumbar, spinal stenosis cervical, osteoarthritic cervical spine, lumbar herniated discs, lumbar radiculopathy, cervical myelopathy, carpal tunnel, leg parasthesia, chronic pain and depression.  (ECF No. 9-4, AR 159.)

### A.    The ALJ Decision

For the purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation.  20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).  If the ALJ determines that a claimant is either disabled or not disabled at a step in the process, the ALJ does not continue on to the next step.  *Id.* §§ 404.1520(a); 416.920(a); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).  In brief, the ALJ considers whether the claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe, medically determinable physical or mental impairment . . . or a combination of impairments that is severe" and that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. § 416.920(a)(4)(i)-(v).  Between steps three

20cv2065-GPC(AHG)

and four, the ALJ must assess the claimant's RFC.  *Id.* §§ 404.1520(e); 416.920(e); *Bray*, 554 F.3d at 1222–23; *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five.  *Bray*, 554 F.3d at 1222.

Here, the ALJ applied the five-step sequential framework to determine that Plaintiff is not disabled.  (ECF No. 9-2, AR 25-37.)  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 10, 2017, the alleged onset date of disability.  (*Id.*, AR 25-26.)  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and mental impairments variously diagnosed as depression, anxiety and posttraumatic stress disorder.  (*Id.*, AR 26.)  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*, AR 27-29.)  The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except that she "can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl . . . can frequently push, pull, and or reach overhead with the bilateral upper extremities . . . must avoid concentrated exposure to vibration and hazards, such as unprotected heights and dangerous machinery . . . and is limited to unskilled tasks, consistent with a specific vocational preparation of no more than two."  (*Id.*, AR 29.)

At step four, given Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform any past relevant work."  (*Id.*, AR 35-36.)  Finally, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*, AR 37.)  Therefore, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act from May 10, 2017 through the date of its decision.  (*Id.*)

/ / /

**Discussion**

**A.     Standards of Review**

    **1.      Standard of Review of Magistrate Judge's Report and Recommendation**

The district court's duties in connection with a Report from a magistrate judge are set forth in Federal Rules of Civil Procedure 72(b) and 28 U.S.C. § 636(b).  The district court "may accept, reject or modify, in whole or in part, the findings and recommendations made by the magistrate."  28 U.S.C. § 636(b).  The district court need not review *de novo* those portions of a Report to which neither party objects.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (*en banc*).  When no objections to a Report are made, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law.  *Campbell v. U.S. Dist. Ct. for the N. Dist. Of California*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).  Here, Plaintiff filed an objection to the Magistrate Judge's Report; thus, the Court will make a *de novo* determination of those portions of the report to which objections are made.

    **2.      Standard of Review of Commissioner's Final Decision**

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Commissioner of Social Security for further proceedings.  *Id.*

The scope of the reviewing court is limited; it may only "set aside the ALJ's denial of benefits . . . when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006).  However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**B.    Analysis**

Plaintiff raises three grounds challenging the ALJ's decision: (1) the ALJ failed to properly weigh the medical opinion evidence of Dr. Christopher Pudol, D.O., Plaintiff's treating physician, and state agency consultants, Dr. F. Kalmar, M.D. and Dr. M. Gleason, M.D. in determining Plaintiff's physical RFC; (2) the ALJ improperly evaluated Plaintiff's subjective statements; and (3) the ALJ relied on a flawed hypothetical to the vocational expert.  (ECF No. 15 at 4.[1])  Defendant contends the ALJ's decision is supported by substantial evidence, free of legal error, and should be affirmed.  (*Id*. at 53.)

**1.     ALJ's Weighing of Medical Opinion Evidence**

**a.     Dr. Pudol's Medical Opinion**

Plaintiff argues that the ALJ erred in failing to examine the relevant factors, including supportability and consistency, and articulate why he rejected the September 9, 2019 opinion of Dr. Pudol, Plaintiff's treating physician since December 2016.  (ECF No. 15 at 5-13.)  She maintains that 1) Dr. Pudol sufficiently explained his opinions and cited to "attached orthopedic records" documenting clinical findings and diagnostic test results of her impairments, (*id.* at 8-9); 2) the ALJ improperly cherrypicked treatment records that found a normal gait, negative straight leg tests, and full motor strength while ignoring other records that found abnormal gait and weakness, (*id.* at 9-12); and 3) the ALJ placed undue weight on her ability to engage in daily living activities, (*id.* at 12).

Defendant responds that the ALJ properly considered the factors of supportability and consistency when evaluating Dr. Pudol's medical opinion.  (*Id.* at 26.)  First, the ALJ properly found Dr. Pudol's opinion unpersuasive because his "opinion was in the form of

---

[1] Page numbers are based on the CM/ECF pagination.

a checklist and [] only 'included conclusions regarding functional limitations without any detailed rationale for those conclusions.'" (*Id.* at 28.)  Second, the ALJ properly recognized that the medical record "supports the existence of degenerative disc disease of the lumbar and cervical spine," but also noted that other repeated medical findings, such as normal gait and full motor strength, do not support greater physical limitations than those identified in the RFC.  (*Id.* at 30-31.)  Third, Defendant argues that the ALJ permissibly found Plaintiff's activities of daily living inconsistent with Dr. Pudol's opinion, which characterized Plaintiff as "extremely limited."  (*Id.*)

Because Plaintiff filed for disability insurance benefits in March 2018, it is not disputed that the Social Security Administration's 2017 revised regulations[2] on considering medical opinions and prior administrative medical findings apply.  *See* 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c (2017).  Under the revised regulations, the hierarchy of medical opinions was eliminated[3] and the ALJ will "not defer or give any specific evidentiary weight, including controlling weight" to any medical opinion or prior administrative medical finding[4] ("PAMF") and an ALJ must instead focus adjudication on the "persuasiveness" of the medical opinions.  *Id.* §§ 404.1520c(a); 416.920c(a).

In evaluating the persuasiveness of a medical opinion or PAMF, an ALJ must consider the: (1) supportability of the medical evidence;[5] (2) the consistency of the medical opinions or PAMFs with other medical and nonmedical sources in the claim;[6] (3)

---

[2]  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).
[3] Under the hierarchy in the prior regulations, the treating physician was given more weight than an examining physician and an examining physician was given more weight than a nonexamining physician.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).
[4] A "prior administrative medical finding" consists of a finding about a medical issue by a "Federal or State agency medical or psychological consultant[ ] at a prior level of review."  20 C.F.R. § 404.1513(a)(5); 20 C.F.R. § 416.913(a)(5).
[5] "(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).
[6] "(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

the relationship between the medical source and the claimant; (4) the medical source's specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5).  The supportability and consistency factors are "the most important factors." *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

The ALJ may, but is not required to, explain how the other factors, other than supportability and consistency, were considered.  *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). However, when two or more medical opinions or PAMF "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  *Id.* §§ 404.1520c(b)(3); 416.920c(b)(3).

While the revised regulations remove the hierarchy of medical sources, they do not relieve the ALJ of the obligation to consider the opinions from each medical source.  *See* 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c).  The revised regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b); § 416.920c(b).  The Court must also continue to consider whether substantial evidence supports the ALJ's analysis.[7]  *See* 42 U.S.C. § 405(g).

_____

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

[7] The Ninth Circuit has not yet addressed the impact of the new regulations on the requirement that the ALJ provide "clear and convincing" reasons for rejecting an uncontradicted physician's opinion and "specific and legitimate reasons" for rejecting a contradicted physician's opinion.  *Moua v. Comm'r of Soc. Sec.,* No. 1:20-CV-01230-BAK, 2022 WL 317189, at *6 (E.D. Cal. Feb. 2, 2022).  District courts appear to be split on whether these articulations standards apply under the revised regulations. *Compare Scott P. v. Kijakazi*, Case No. 6:20-CV-1483-SI, 2022 WL 326107, at *7 (D. Or. Feb. 3, 2022) (citing *Terry B. v. Acting Comm'r of Soc. Sec.*, Case No. 3:21-cv-5115-DWC, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021) (ALJ must still provide specific and legitimate reasons to reject medical opinion); *Morgan v. Saul*, Case No. 5:19-CV-02191 (VEB), 2020 WL 11723490, at *5 (C.D. Cal., Oct. 21, 2020)

Dr. Christopher Pudol, D.O. has been treating Plaintiff regularly since December 2016.  (ECF No. 9-8, AR 586.)  On September 9, 2019, Dr. Pudol completed a Fibromyalgia Residual Functional Capacity Questionnaire which mainly contain check-the-box questions.  (ECF No. 9-11, AR 1014-17.)  Dr. Pudol noted that Plaintiff met the American College of Rheumatology criteria for fibromyalgia and listed her other diagnosed impairments as "chronic low back pain with sciatica, chronic right shoulder pain, lumbar spinal stenosis."  (*Id.*, AR 1014.)  He listed Plaintiff's prognosis as "poor." *Id*.  Dr. Pudol checked the "Yes" box asking whether Plaintiff's impairments lasted or can be expected to last at least twelve months.  (*Id.*)  When asked to identify any "clinical findings, laboratory and test results that show [Plaintiff's] medical impairments," Dr. Pudol wrote "See orthopedic notes."  (*Id.*)  Yet, no supplementary orthopedic notes are attached to the questionnaire.[8]

Dr. Pudol checked the boxes for exhibited impairments of multiple tender points, non-restful sleep, morning stiffness, chronic fatigue, muscle weakness, irritable bowel syndrome, premenstrual syndrome, dysmenorrhea, breathlessness, anxiety, panic attacks, depression, and carpal tunnel syndrome.  (*Id.*)  He checked the box that emotional factors

_____

("[T]he ALJ was obliged under both existing case law and the new regulations to explain, at a minimum, with specific and legitimate reasons, his conclusion that [the medical] opinion was not supported by the objective medical evidence"); *with Teresa G. v. Kijakazi*, Case No.: 20cv1557-RBB, 2022 WL 298367, at *4 (S.D. Cal. Feb. 1, 2022) (because revised regulations eliminated the treating source rule, "any argument set forth by Plaintiff that relies on the alleged failure by the ALJ to articulate specific and legitimate reasons supported by substantial evidence to reject [the medical] opinion is without merit."). Further, other courts see no analytical difference between a specific, legitimate reasons supported by substantial evidence or explaining why a medical opinion is not properly supported or is inconsistent with other opinions.  *See Anthony R. v. Saul*, Case No. CV 20-04828-JEM, 2021 WL 2073471, at *4 (C.D. Cal. May 24, 2021) (citing *Paula J. v. Comm'r Soc. Sec.*, CASE NO. 2:20-CV-1002-DWC, 2021 WL 1019939, at *2 (W.D. Wash. Mar. 17, 2021) ("[I]t is not clear the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations differs from the current Ninth Circuit standards in any significant respect")).  Here, under the specific and legitimate, substantial evidence, or not properly supported or inconsistent standard, the Court concludes that the ALJ did not err in rejecting the opinion of Dr. Pudol.

[8] The questionnaire specifically states, "Attach all relevant treatment notes, radiologist reports, laboratory and test results that Apply."  (ECF No. 9-11, AR 1014.)

"contribute[d] to the severity" of Plaintiff's symptoms and functional limitations.  (*Id.*) Dr. Pudol checked the boxes for the location of Plaintiff's pain to be in the lumbosacral spine, cervical spine, thoracic spine, right shoulder, right arm, left arm, left knee, right hand, left hand, right hip, right leg, and left leg.  (*Id.,* AR 1015.)  Dr. Pudol checked the box that Plaintiff's pain is severe enough that it would frequently, defined as 34% to 66% of an 8-hour working day, interfere with the attention and concentration needed to perform simple work tasks.  (*Id.*)  He specified that Plaintiff could not walk the duration of a city block without rest or severe pain.  (*Id.*)  Dr. Pudol noted that Plaintiff can sit for 5 to 10 minutes before needing to get up and stand for 5 minutes before needing to sit down or walk around.  (*Id.*)  During an 8-hour workday, he indicated that Plaintiff could sit or stand/walk for less than 2 hours in an 8-hour working day with normal breaks.  (*Id.*, AR 1016.)  He stated that she would need to walk about 4-5 minutes every 5-10 minutes during an 8-hour work day.  (*Id.*)  Dr. Pudol also indicated that Plaintiff would need to take unscheduled breaks for a duration of 5-10 minutes every 5 minutes during an 8-hour working day. (*Id.*)  He determined that Plaintiff can frequently lift and carry less than 10 pounds, rarely lift and carry ten pounds and can never lift and carry 20 and 50 pounds. (*Id.*)  He also assessed that she can occasionally twist, stoop (bend), rarely crouch/squat and climb stairs and never climb ladders.  (*Id.*)  Dr. Pudol checked the boxes that Plaintiff could frequently perform the movements of looking down, looking up and turning her head right or left, while noting Plaintiff could occasionally perform the movement of holding her "head in a static position." (*Id.*, AR 1017.)  Dr. Pudol estimated that Plaintiff would likely be "absent from work as a result of the impairments or treatment" more than four days per month.  (*Id.*)  He further wrote that she has anxiety, depression and PTSD. (*Id.*)

The ALJ found the opinion of Dr. Pudol's assessment on September 9, 2019 unpersuasive as lacking supportability and consistency.  (ECF No. 9-2, AR 34.)  On supportability, the ALJ explained that the checklist-style form "includes only conclusions regarding functional limitations without any detailed rationale for those conclusions."

(*Id.*)  On consistency, the ALJ found that Dr. Pudol's assessment was inconsistent with the record because exam findings generally indicated "intact neurological functioning, including normal gait, negative straight leg raises, and full motor strength of the extremities."  (*Id.*)  Additionally, the ALJ relied on Plaintiff's claimed ability to "manage self-care, operate a car, and perform light household chores and yardwork such as light laundry and raking leaves" in finding Dr. Pudol's medical opinion unpersuasive.  (*Id.*)

The Magistrate Judge concluded that the ALJ's decision finding Dr. Pudol's medical opinion as not persuasive was properly supported with explanation.  (ECF No. 16 at 17-22.)  First, Plaintiff objects arguing that the Magistrate Judge and the ALJ erred because Dr. Pudol's September 9, 2019 assessment was not just a check-box form but provided detailed written evidence to support his assessment in that assessment.  (ECF No. 17 at 2-3.)

An ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).  However, a physician's opinion in the form of check-box questionnaire is not a proper basis for rejecting an opinion if it is supported by treatment notes or other medical evidence.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (even though treating physician's assessments were of the "check-box" form and contain almost no detail or explanation, the record of his own extensive treating notes supported physician's opinions); *Garrison v. Colvin*, 759 F.3d 995, 1014 n. 17 (9th Cir. 2014) (ALJ erred by rejecting check-box forms opinions because they "reflected and were entirely consistent with the hundreds of pages of treatment notes created by [the physicians] in the course of their relationship with [the claimant].; *Esparza v. Colvin*, 631 Fed. App'x 460, 462 (9th Cir. Nov. 25, 2015); *Flowers v. Colvin*, CASE NO. 3:16-cv-05025 JRC, 2016 WL 4120048, at *4 (W.D. Wash. Aug. 3, 2016) ("the ALJ erred in rejecting [medical] opinions reflected on checked boxes, which were supported by his examination notes and clinical findings").

1    Here, the Court concludes that the ALJ erred by summarily rejecting Dr. Pudol's

2    check-box questionnaire without considering his extensive treating notes and clinical

3    findings in the record.  Even though Dr. Pudol did not attach any clinical findings,

4    laboratory or test results to the September 9, 2019 questionnaire, as he stated he did, the

5    record is replete with years of his treatment notes and clinical findings as well as

6    treatment notes by other providers, and diagnostic test results.  Nevertheless, the Court

7    concludes that the ALJ's error was harmless on supportability, *see Stout v. Comm'r Soc.*

8    *Sec. Admin,* 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error

9    that is "inconsequential to the ultimate nondisability determination"), because the ALJ,

10   on consistency, considered and addressed Plaintiff's extensive medical records, and in

11   assessing them, he concluded that Dr. Pudol's opinion was not consistent with them.

12   On consistency, Plaintiff next argues that the ALJ improperly cherry-picked

13   treatment records that found normal gait, negative straight leg raising tests and full motor

14   strength, ignored other records that found abnormal gait and weakness and failed to

15   explain how normal findings were more relevant than the significant abnormalities

16   documented by her spinal imaging.  (ECF No. 15 at 11.)  Defendant responds that the

17   ALJ considered the MRIs revealing significant findings of the lumbar and cervical spine

18   and records noted tenderness and reduced range of motion, but there were also consistent

19   records of normal clinical findings; thus, the ALJ reasonably concluded that these normal

20   findings were not consistent with Dr. Pudol's opinion.  (*Id*. at 29-30.)

21   To determine consistency, the ALJ must compare the provider's opinion with the

22   other opinions and records in the file, and the more consistent a medical opinion is with

23   the evidence from other medical sources and nonmedical sources in the claim, the more

24   persuasive the medical opinion will be.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

25   The ALJ found that Dr. Pudol's opinion was inconsistent with the record because

26   exam findings generally revealed intact neurological functioning such as normal gait,

27   negative straight leg raises and full motor strength of the extremities.  (ECF No. 9-2, AR

28   34.)  The Report concluded that the ALJ properly rejected Dr. Pudol's opinion as

unpersuasive.  (ECF No. 16 at 20.)  Plaintiff objects to the Report arguing that the ALJ's inconsistency ruling selectively relied on favorable treatment records while ignoring the diagnostic records of MRIs and clinical examination findings of antalgic gait, tenderness and decreased motion in the spine, muscle weakness, positive bilateral Spurling test[9], paresthesia/abnormal sensation, thoracic kyphosis, and positive Hoffman test[10].  (ECF No. 17 at 4-6.)

After a careful review of the record and the ALJ's decision, the Court finds that the ALJ did not only rely on medical records to support his unfavorable decision; in fact, the ALJ considered records that supported her impairments and those that did not support her level of functioning.  For instance, the ALJ specifically recognized and articulated the findings of the MRIs of the lumbar and cervical spine demonstrating severe degenerative disc disease taken in the spring of 2017.[11]  (ECF No. 9-2, AR 30.)  He also discussed the treatment records from the orthopedist, referred by Dr. Pudol, noting decreased range of motion to the cervical spine but also noting no significant motor deficits and normal sensation to the bilateral upper extremities.  (*Id.*, AR 30-31, 34.)  On November 27, 2017 and January 10, 2018, the orthopedist noted Plaintiff's diagnostic results evidencing her severe disc degeneration but clinical findings found full motor strength of the upper extremity, intact upper extremity sensation to light touch, negative Hoffman and Spurling

---

[9] A Spurling test assesses nerve root pain and assists to diagnose cervical radiculopathy.  *Luna v. Moon*, Case No. 1:16-cv-00313-NONE-SAB (PC), 2020 WL 1904827, at *10 (E.D. Cal. Apr. 17, 2020).

[10] A Hoffman test examines the reflexes of the upper extremities to detect possible spinal cord compression.  *Luna*, 2020 WL 1904827, at *10.

[11] On March 9, 2017, an MRI of the lumbar spine revealed "[l]umbar spondylosis, severely involving L3-L4 where significant spinal stenosis and left neural foraminal narrowing are demonstrated.  Lesser extent spinal stenosis and neural foraminal narrowing are seen at the remaining of the levels spading L5-S1.  L3 and L4 vertebral body bone marrow edema can be degenerative in nature versus less likely bone contusion."  (ECF No. 9-8, AR 496; *id.*, AR 646.)  On May 17, 2017, an MRI of the cervical spine revealed "C2-3 moderate right neural foraminal stenosis, due to severe right-sided facet arthropathy"; "C4-5 bilateral facet arthropathy with mild left neural foraminal stenosis"; "C5-6 multifactorial mild spinal stenosis, severe left neural foraminal stenosis, and mild-to-moderate right neural foraminal stenosis"; and "C7-T1 bilateral facet arthropathy with mild left neural foraminal stenosis."  (ECF No. 9-8, AR 498; ECF No. 9-9, AR 758.)

tests and full motor strength of the lower extremity.  (ECF No. 9-9, AR 662; ECF No. 9-8, AR 568-71).  He also noted that she was treated with lumbar epidural steroid injection on February 22, 2018.  (ECF No. 9-2, AR 31.)

The ALJ further noted Plaintiff's ongoing complaints of pain in the neck, upper extremity pain, back pain and lower extremity pain and some exam findings of tenderness and reduction in range of the motion of the cervical and lumbar spine, yet there were also findings of normal lumbar and cervical paraspinal muscle strength and tone and normal gait and station.  (*Id.*)  Moreover, despite her complaints of shoulder pain, her physical findings and x-ray, dated July 9, 2018, showed no evidence of any abnormalities.  (*Id.*; ECF No. 9-9, AR 824.)  The ALJ continued to explain that the medical records from September 10, 2018 to July 22, 2019 showed continued complaints of pain of the lower back, leg, shoulder and hip but physical exam findings were generally unremarkable and while there was some tenderness and reduced range of motion to both the cervical and lumbar spine, there were no obvious deformities and she exhibited normal gait, full motor strength and negative straight leg raises.  (*Id.*)

In her objections, while Plaintiff cites to the record demonstrating one instance of antalgic gait, (ECF No. 9-8, AR 655-56), there are numerous clinical findings of "normal gait." (*See e.g.*, ECF No. 9-9, AR 450, 477, 698, 707, 717, 741, 745, 838.)  While there are instances of tenderness and decreased motion in the spine, there are also numerous instances of normal range of motion of the lumbosacral spine, (*see e.g.*, ECF No. 9-9, AR 698, 736), and normal range of motion of the cervical spine, (*see e,g,* ECF No. 9-9, AR 741, 749, 841).   Similarly, muscle weakness findings were also inconsistent.  (*Compare* ECF No. 9-8*, AR 480; ECF No. 9-10, AR 865; ECF No. 9-11, AR 917-18 (muscle weakness) *with* ECF No. 9-9, AR 694, 698, 717, 756, 841 (normal muscle strength).)  Finally, Plaintiff cites to one record of a positive bilateral Spurling test on May 22, 2017, (ECF No. 9-8, AR 480), and two positive Hoffman tests, (ECF No. 9-9, AR 736, 745).  Yet, the record also reveals numerous negative Hoffman and Spurling tests.  (*See e.g.*, ECF No. 9-9, AR 736, 741, 749, 745. 756, 838, 841.)

1    Here, the ALJ considered the conflicting medical record and when there is

2   conflicting medical evidence, the ALJ is charged with determining credibility and

3   resolving any conflicts, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012), and if

4   "evidence is susceptible to more than one rational interpretation, one of which supports

5   the ALJ's decision, the conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947,

6   954 (9th Cir. 2002); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.  2001) (when the

7   ALJ presents a reasonable interpretation that is supported by the evidence, it is not the

8   role of the courts to second-guess it.).  The Court "must uphold the ALJ's findings if they

9   are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d 1104,

10   1111.  The Court concludes that the ALJ's rejection of Dr. Pudol's September 9, 2019

11   opinion as unpersuasive was supported by substantial evidence.

12    Finally, Plaintiff argues that the ALJ placed undue weight on the ability of Plaintiff

13   to engage in daily living activities in rejecting Dr. Pudol's opinion.  (ECF No. 15 at 12.)

14   Defendant responds that the ALJ reasonably conclude that Plaintiff's daily living

15   activities were inconsistent with Dr. Pudol's opinion.  (*Id.* at 30.)

16    The ALJ must develop the record to show how the daily activities are inconsistent

17   with the physician's opinion.  *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir 2017);

18   *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating

19   physician's opinion and a claimant's activity level is a specific and legitimate reason for

20   rejecting the opinion.")  A physician's assessment of a claimant's restrictions may be

21   rejected to the extent it "appear[s] to be inconsistent with the level of activity" the

22   claimant maintains.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ

23   properly rejected physician's opinion that the claimant could not do any bending,

24   stooping, crouching, crawling, kneeling, climbing, and balancing which was inconsistent

25   with maintaining a household and raising two young children).

26    The ALJ rejected the opinion of Dr. Pudol that she is capable of less than sedentary

27   exertion and requires multiple unscheduled breaks every five minutes during an 8 hour

28   workday and will likely miss more than four days of work per month because Plaintiff

15

"reports that she is physically able to manage self-care, operate a car, and perform light household chores and yardwork such as light laundry and raking leaves." (ECF No. 9-2, AR 34.)

The Report concluded that the ALJ's findings that Plaintiff's daily living activities conflicted with Dr. Pudol's report was sufficiently developed. (ECF No. 16 at 20.) Plaintiff objects arguing that there is no evidence that she engaged in any regular and sustained activities of daily living that contradict Dr. Pudol's opinion on what she can do in a competitive work environment. (ECF No. 17 at 6.)

At the hearing, Plaintiff testified that she performs light household chores, drives her car locally, is able to shower, cooks simple meals, and is able to dress herself in the morning even though it can up to three hours. (ECF No. 9-3, AR 113-14.) She also owns and takes care of three small, older dogs. (*Id.*, AR 111.) She testified that until recently, she had been doing light cleaning for an elderly couple, about 12 hours a month, for about a year. (*Id.*, AR 111-12.) Her testimony is generally consistent with her function report but on that report she stated she can sit at a desk for no more than 30 minutes which is contrary to Dr. Pudol's opinion that she can sit no more than 5 to 10 minutes at a time. (ECF. No. 9-7, AR 340.)

The Court concludes that the ALJ's rejection of Dr. Pudol's opinion of significant functional limitation stating that Plaintiff can only do less than sedentary exertion and cannot sit for more than 5 to 10 minutes or stand for 5 minutes before needing to walk around and needing to take breaks every 5 to 10 minutes for 5 minutes is contrary to her daily living activities and is not supported by what she can do in her daily life. Therefore, the ALJ did not place undue weight on her ability to engage in daily living activities when concluded they were inconsistent with Dr. Pudol's opinion.

**b.    Consultative Medical Opinions of Drs. Gleason and Kalmar**

As to the state agency consultants, Plaintiff argues that the ALJ improperly relied on them because they were conducted without a full record as they were performed fifteen months before the ALJ's decision. (ECF No. 15 at 13-14.) Defendant argues that

Plaintiff has not identified any specific treatment records post-dating August 2018 that would have modified the consultants' analysis and the ALJ specifically stated that their PAMFs were consistent with evidence submitted at the hearing level.  (*Id.* at 31.)

"Reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Ruiz v. Colvin*, 638 Fed App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to non-examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities").  "Consultative examiners, who evaluate a claimant's condition during the initial phases of the benefits application process, will never have all of the evidence available to the ALJ, whose decision is rendered often years later, at which point the claimant will have amassed additional evidence of his alleged disability." *Jose Z. v. Saul,* No. EDCV 18-2476-KS, 2020 WL 434259, at *8 (C.D. Cal. Jan. 28, 2020) (internal record citations omitted). However, the value of their opinions should not be diminished if the examiners reviewed the available evidence predating their opinions, and the ALJ considered other doctors' opinions and the record.  *Id.*

Importantly, in this case, Dr. Kalmar and Dr. Gleason reviewed the lumbar and cervical MRI results from March 9, 2017, (ECF No. 9-8, AR 495–96), and May 17, 2017, (*id.*, AR 497–98), and considered them in their analysis.  Besides a summary argument, Plaintiff has failed to explain what evidence that post-dates their opinions would render their decisions less persuasive; therefore, the Court does not find Plaintiff's argument persuasive.

Next, Plaintiff asserts that Dr. Gleason, a geriatrician, and Dr. Kalmar, a plastic surgeon, are non-examining state agency consultants with no relevant medical specialization and whose findings are contradicted by Dr. Pudol, her treating physician. (ECF. No. 15 at 31-32.)  Defendant responds that Dr. Puldol is also not a relevant specialist, but nonetheless, under the new regulations, the ALJ is not required to articulate

17

the specialization factor where, in this case, the ALJ did not find that two or more medical opinions on the same issue are both equally well supported and consistent but not exactly the same.  (*Id.* at 31-32.)

While the ALJ must articulate how he considered the most important factors of supportability and consistency, an explanation as to specialization is not required unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue.  *See* 20 C.F.R. §§ 404.1520c(b); 416.920c(b).  Moreover, the ALJ is not required to provide more weight to the treating physician than the state agency doctors as the new regulations eliminated the hierarchy of medical opinions.  *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(a).

Here, because the ALJ did not find that the opinions of Dr. Pudol, Dr. Gleason, and Dr. Kalmar were equally well-supported and consistent with the record, the requirement to address the specialization factor was not triggered.  Moreover, the revised regulations eliminate any hierarchy of medical opinions.  Therefore, Plaintiff's argument to the contrary is without merit.  *See Julie R.M. v. Kijakazi,* Case No.: 20cv1608-GPC-MDD, 2021 WL 4993034, at *6 (S.D. Cal. Oct. 26, 2021) (finding that the ALJ sufficiently evaluated two medical sources' opinions, who were specialists in mental health and had a long-term relationship with the claimant, and "did not err by omitting his reasoning regarding the factors of specialization and relationship with the claimant," because doing so is not required under the 2017 revision).

Plaintiff further argues that the ALJ failed to consider supportability and consistency when evaluating Dr. Gleason and Dr. Kalmar.  (ECF No. 17 at 7.)  The Court disagrees.  The ALJ found the non-examining state agency consultants Dr. F. Kalmar, M.D. and Dr. M. Gleason, M.D. opinions persuasive because they were consistent with the longitudinal record, including with records submitted at the hearing level, as well as supported by explanation and citations to the record.  (ECF. No. 9-2, AR 33.)  On May 4, 2018, after reviewing and assessing Plaintiff's medical history and noting her significant findings, (ECF No. 9-4, AR 144-54), Dr. Kalmar determined that Plaintiff could perform

1   light work noting she could occasionally lift and carry 20 pounds, frequently lift and

2   carry 10 pounds, stand/walk with normal breaks about six hours in an 8-hour workday

3   and had no limitations on pushing or pulling.  (*Id.*, AR 152-53.)  Dr. Kalmar opined that

4   Plaintiff could never climb ladders, ropes or scaffolds but could occasionally climb

5   ramps/stairs, balance, stoop, kneel, crouch and crawl and limited left and right overhead

6   reaching.  (*Id.*, AR 153.)  He also noted postural limitations.  (*Id.*)  On September 26,

7   2018, on reconsideration, state agency medical consultant Dr. Gleason, M.D., also noting

8   her significant findings, agreed with Dr. Kalmar's findings and reaffirmed that Plaintiff

9   could perform light work.  (ECF No. 9-4, AR 163-64.)  The ALJ acknowledged that the

10   non-examining state agency consultants indicated Plaintiff experienced neck pain, back

11   pain and upper and lower extremity pain, consistent with cervical radiculopathy, spinal

12   stenosis, lumbago and lumbar radiculopathy, yet cited to Plaintiff's longitudinal record

13   noting negative straight leg raises and full motor strength to the upper and lower

14   extremities.  (ECF No. 9-2, AR 33.)  The ALJ found significant persuasive value in the

15   opinions of the state agency consultants because they were supported by the evidence the

16   doctors reviewed and were consistent with the overall evidence.  (*Id.*)

17       While the opinions of the non-examining state agency consultants, standing alone,

18   are not substantial evidence, here, the ALJ, in assessing Plaintiff's RFC, did not rely

19   solely on the state agency consultants but considered the numerous treatment records by

20   primary care providers, treating specialists, state agency consultants and nurse

21   practitioners.  Accordingly, the Court ADOPTS the Report and concludes that the ALJ

22   did not fail to weigh the medical opinions in determining her physical RFC.

23       **2.    ALJ's Evaluation of Plaintiff's Subjective Statements**

24       Plaintiff contends that the ALJ's rejection of Plaintiff's allegations of pain is not

25   supported by substantial evidence and argues that because Plaintiff produced evidence of

26   her underlying impairments, as acknowledged by the ALJ, no specific objective findings

27   were required to support her subjective testimony regarding pain.  (ECF No. 15 at 38-39.)

28   Defendant disagrees arguing that the ALJ did not arbitrarily reject Plaintiff's subjective

testimony; instead the "ALJ here provided valid reasons, supported by substantial evidence in the record, in finding Plaintiff's symptom testimony not fully consistent with the record." (*Id*. at 40.)

The Ninth Circuit has established a two-step analysis to determine whether a claimant's testimony about subjective pain is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ determines whether the claimant has provided objective evidence of an underlying impairment or impairments that could reasonably be expected to produce the pain or symptoms alleged. *Id*. at 1036. Second, if the first factor is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements"). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.' [] For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, … and 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

As summarized by the ALJ, Plaintiff's subjective statements were as follows:

In this case, the claimant alleged that she is disabled due to symptoms and restrictions related to her combination of impairments, which she reported included spinal stenosis of the lumbar and cervical spine, osteoarthritis of the cervical spine, lumbar herniated discs, lumbar radiculopathy, cervical myelopathy, carpal tunnel syndrome, leg paresthesia, chronic pain, and

1
2
3
4
5
6
7
8

depression. The claimant alleged her impairments affected her ability to work and caused pain. The claimant also reported lumbar and cervical pain with a typical pain level of a six to nine out of ten in her shoulder, back, and leg, as well as partial paresis in her left leg, such that she needs to be moving and shifting in her chair constantly to get comfortable. As for functional limitations, the claimant reported her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and use her hands. The claimant also alleges that she experiences affective, anxiety and trauma-related disorders associated with deficits in memory and concentration and she reported that she disliked excessive stress and preferred structured environments.

9
10
11
12
13
14
15
16
17
18
19
20
21

(ECF No. 9-2, AR 30 (internal citations omitted).)  On the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but concluded on the second step that her statements regarding the intensity, persistence and liming effects of such symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  (ECF No. 9-2, AR 30.)  The ALJ noted that despite her combination of impairments, she has engaged in "somewhat normal level of daily activity and interaction" and "admitted to activities of daily living including attending to her personal hygiene, preparing light meals, performing light household chores, managing her finances, shopping in stores, driving her car, socializing with others, and displaying sufficient concentration and attention to follow television programs."  (*Id.*, AR 32.)  The ALJ reasoned that Plaintiff's physical and mental ability needed to perform these activities are similar to those needed to obtain and maintain employment.  (*Id.*)

22
23
24
25
26
27

The Report recommends this Court find the ALJ properly evaluated Plaintiff's subjective statements.  (ECF No. 16 at 26.)  In her objection, Plaintiff maintains that the ALJ's rejection of her symptom allegations is not supported by substantial evidence as explained in her first argument where the clinical and objective evidence supports a finding of disability and is consistent with her treating physician's opinion.  (ECF No. 17 at 8.)  She also argues that her statements about the severity of her symptoms cannot be

28

rejected solely because the available objective medical evidence does not support her statements.  (*Id.*)

Plaintiff is correct that the severity of her alleged symptoms does not need to be supported by specific objective findings, but the ALJ must give full consideration of all the evidence related to subjective pain.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  Here, the ALJ, after reviewing the medical evidence, found that Plaintiff has a medically determinable impairment that could reasonably cause her alleged symptoms.  (ECF No. 9-2, AR 30.)  Then, he considered her daily living activities and found them inconsistent with her claimed statements of pain and limitations.[12]  (*Id.*, AR 32.)  These daily living activities are inconsistent with her testimony of severe pain, 6-9 out of 10 and described as "crushing bone pain" and "sharp stabbing pain" and inability to stand or sit for longer than 5 to 10 minutes.  (See ECF No. 9-3, AR 126.)  The Court concludes that the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's testimony relating to her symptoms.

Plaintiff finally claims that her 33 consecutive years of honorable work history with sustained earnings prior to the onset of her alleged disability should be noted.  (ECF No. 15 at 39; ECF No. 17 at 9.)  In support, Plaintiff cites to caselaw but they address an ALJ's consideration of a claimant's long or limited work history as a factor in evaluating the claimant's symptom testimony.  In this case, the ALJ did not address her prior, long work history in determining her credibility on her subjective symptom testimony.  Therefore, her argument concerning her long work history is not relevant to the ALJ's determination in this case.

In sum, the Court ADOPTS the Report and concludes that the ALJ provided specific, clear and convincing reasons to reject Plaintiff's symptom testimony.

---

[12] Plaintiff objects to the Magistrate Judge's noted inconsistency in Plaintiff's medical records that her pain worsened when cold but that it lessened with ice.  (ECF No. 16 at 26.)  Because the ALJ did not rely on this alleged inconsistency in his decision, the Court sustains Plaintiff's objection and concludes that this alleged inconsistency does not support the ALJ's decision.

### 3.     ALJ's Hypothetical to the Vocational Expert regarding Plaintiff's Mental Limitations

On Plaintiff's final challenge, she argues that the ALJ's decision failed to present a hypothetical to the vocational expert that accurately described all of her mental limitations.  (ECF No. 15 at 45.)  She claims that the ALJ's mental RFC limitation to unskilled work did not fully capture her "moderate" difficulty in maintaining concentration, persistence, or pace.  (*Id.*)  Defendant contends that the hypothetical posed to the vocational expert, whether Plaintiff can do unskilled work, was not error because "the ALJ properly translated Plaintiff's moderate difficulties with maintaining concentration, persistence, or pace, into an RFC for unskilled tasks."  (*Id.* at 49.)

Hypothetical questions posed to the vocational expert "must set out *all* the limitations and restrictions" of the Plaintiff.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original)).  "If the hypothetical does not reflect all the [Plaintiff]'s limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

At step three, the ALJ assessed Plaintiff's mental impairment with a moderate limitation in "concentrating, persisting, or maintaining pace."[13]  (ECF No. 9-2, AR 28.)  In determining her RFC, the ALJ reviewed her mental impairments and found that she is capable of performing unskilled tasks.[14]  (*Id.*, AR 29, 32.)  At the hearing, the ALJ presented a hypothetical question to the vocational expert asking whether Plaintiff, with her limitations, can do some unskilled jobs but did not include Plaintiff's moderate

---

[13] While not relevant to Plaintiff's argument, the ALJ also found that Plaintiff has mild limitations in understanding, remembering, or applying information and in interacting with others.  (ECF No. 9-2, AR 28.)

[14] "Unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a); 416.968(a).

difficulties in her ability to maintain concentration, persistence or pace in the hypothetical.  (*See* ECF No. 9-3, AR 135-38.)

The Report agreed with Defendant's position that the ALJ properly translated Plaintiff's moderate limitation in concentration, persistence or pace into an RFC for unskilled tasks.  (ECF No. 16 at 30.)  Plaintiff filed an objection arguing that unskilled work has no relationship to her ability to concentrate, persist or maintain a regular pace and the hypothetical presented to the VE was flawed.  (ECF No. 17 at 10.)

In support of their respective positions, Plaintiff relies on *Brink v. Comm'r Soc. Sec.*, 343 Fed. App'x 211, 212 (9th Cir. 2009) while Defendant relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174 (citing *Howard v. Massanari,* 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration persistence or pace); and *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace)).  In *Stubbs-Danielson*, one doctor found that the plaintiff had a moderate limitation in pace and thinking but did not assess whether she could perform unskilled work on a sustained basis while another doctor identified her slow pace in thought and in action and moderate limitations in other mental areas and concluded she could "carry out simple tasks." *Id*. at 1173.  In the case, the ALJ determined "the claimant retains the residual functional

capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public." *Id.* On appeal, the plaintiff argued that the RFC finding did not capture her deficiency in pace. *Id.* The Ninth Circuit held that because there was medical evidence that the claimant had the ability to perform simple tasks, the ALJ did not err and properly translated the claimant's moderate pace limitations into an RFC to perform simple, routine tasks. *Id.* at 1174.

In contrast, Plaintiff relies on *Brink*, where the Ninth Circuit, in an unpublished opinion, held that the ALJ's hypothetical question posed to a vocational expert was inadequate because it referenced "simple, repetitive work," but did not mention the plaintiff's moderate difficulties maintaining concentration, persistence. *Brink*, 343 Fed App'x at 212. The defendant argued that "simple, repetitive work" encompassed difficulties with concentration, persistence or pace. *Id.* However, when the ALJ asked the vocational expert whether the claimant could perform simple, repetitive work, with moderate to marked attention and concentration deficits, the vocational expert responded in the negative. *Id.* The court noted that "simple, repetitive work" and "work requiring concentration, persistence, or pace" were not interchangeable in a hypothetical question, because "repetitive, assembly-line work … might well require extensive focus or speed." *Id.* The court concluded that the hypothetical question to the vocational expert should have included both the limitation to "simple, repetitive work," and also the claimant's moderate limitations in concentration, persistence, or pace and remanded the case. *Id.* In *Brink*, the medical evidence established that the claimant had difficulties in concentration, persistent or pace.[15] *Id.* It is not clear whether there were medical records

---

[15] Defendant notes and the Court agrees that the Ninth Circuit in *Brink* mischaracterized the facts in *Stubbs-Danielson* when it stated that there was no medical evidence presented to establish any limitations in concentration, persistence or pace, *Brink*, 343 Fed. App'x at 212. *See French v. Saul*, No. 2:18–cv–2191–KJM–KJN, 2020 WL 5249626, at 1 n.1 (E.D. Cal. Sept. 3, 2020) ("[i]t appears *Brink* mischaracterizes the underlying facts in *Stubbs-Danielson*); *Walsh v. Berryhill*, No. CV 16–2084 FFM, 2017 WL 7859362, at *6 (C.D. Cal. Nov. 29, 2017) (applying *Stubbs-Danielson* instead of *Brink* noting

that the claimant could do simple, repetitive work.  *See id.*  While the holding in *Brink* and *Stubbs-Danielson* may or may not be reconciled, the Court is bound by the Ninth Circuit ruling in *Stubbs-Danielson*.  Per *Stubbs-Danielson*, the ALJ may translate a claimant's moderate limitation in concentration, persistence or pace into unskilled work if there is medical opinion to support her ability to perform unskilled work.[16]

In this case, the ALJ determined Plaintiff had moderate limitation in concentration, persistence or pace but his determination that she can do "unskilled work" does not appear to be supported by a medical opinion.  Therefore, the ALJ's hypothetical to the vocational expert translating Plaintiff's moderate limitation in concentration, persistence and pace into "unskilled" work was error and not a proper hypothetical posed to the vocational expert.  *See Stubbs-Danielson,* 539 F.3d at 1174*; Lubin v. Comm'r of Soc. Sec. Admin*., 507 Fed. App'x 709, 712 (9th Cir. 2012) ("Although the ALJ found that [the claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert."); *Smith v. Berryhill*, Case No.: 17-cv-02108-CAB (RNB), 2018 WL 6062463, at *4 (S.D. Cal. Nov. 20, 2018) (*Stubbs-Danielson* is distinguishable because there was no medical opinion that the ALJ adopted to make the determination that a limitation to unskilled work adequately captured his finding of a moderate limitation with regard to concentration, persistence, or

_____

that it did not find persuasive the *Brink* court's determination that the medical evidence did not establish any limitations in concentration, persistence or pace).

[16] The Court notes that the Magistrate Judge appears to have conflated simple repetitive tasks with unskilled tasks.  (ECF No. 16 at 30.)  "Unskilled work" and "simple, repetitive tasks" are terms of art and apply to different limitations. See SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (unskilled work indicates job whose specific-vocational-preparation [SVP] requirement is at level 1 or 2, requiring no more than 30 days to learn); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (noting that "the SVP level in a DOT listing indicating unskilled work, does not address whether a job entails only simple, repetitive tasks," which is "more squarely addressed by the GED [reasoning level] ratings").   In other words, not all "unskilled" jobs will necessarily be limited to the simplest level of work.  *See Adams v. Astrue*, No. C 10-2008 DMR, 2011 WL 1833015, at *5 (May 13, 2011) (SVP levels relate to unskilled work and "does not address whether a job entails only simple, repetitive tasks") (quoting *Meissl,* 403 F. Supp. 2d at 983)).

pace.); *Banks v. Colvin*, Case No. CV 15-02646-AS, 2017 WL 113055, at *4 (C.D. Cal. Jan. 11, 2017) ("The ALJ did not rely on medical evidence in the record, including a medical source statement, establishing that Plaintiff was capable of unskilled work despite her moderate limitation in concentration, persistence, or pace."); *Oberg v. Colvin*, No. 6:13-cv-01004-SI, 2014 WL 3695609, at *13 (D. Or. July 24, 2014) (remanding because "the Court finds that a limitation to "unskilled work," without more, is insufficient to incorporate Mr. Oberg's moderate limitation on concentration, persistence, or pace."); *see also Craft v. Astru*e, 539 F.3d 668, 678 (7th Cir. 2008) (finding that the ALJ failed to provide an "accurate and logical bridge" between the medical testimony regarding mental limitations and the restriction to unskilled work).

Moreover, the Court finds the ALJ's error was not harmless.  At the hearing, the VE responded in the negative when asked whether an individual who was off task for 25 percent of the workday on a consistent basis could sustain full-time competitive work. (ECF No. 9-3, AR 138.)  The VE also responded in the negative when asked if an individual, who was absent from work 16 hours per month, could sustain full-time competitive work.  (*Id*., AR 139.)  Therefore, the Court DECLINES to ADOPT the Report and concludes that the ALJ's hypothetical to the VE was flawed when he failed to incorporate moderate limitations in concentration, persistence or pace in the hypothetical.

## C.   Remand For Additional Proceedings is Appropriate

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004).

In this case, where the ALJ failed to present a complete hypothetical to the vocational expert, remand is appropriate.  *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative

proceedings would serve a useful purpose).  Accordingly, the Court REMANDS to the Commissioner for further proceedings.

### Conclusion

Based on the above reasoning, the Court ADOPTS in part and DECLINES to adopt in part the Report.  The Joint Motion for Judicial Review is GRANTED in part in favor of Plaintiff and DENIED in part in favor of Defendant.  The ALJ's decision is REVERSED and the case is REMANDED for further administrative proceedings consistent with the opinion of the Court.

IT IS SO ORDERED.

Dated:  March 24, 2022

Hon. Gonzalo P. Curiel
United States District Judge

20cv2065-GPC(AHG)